**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**DARRYL E. PHILLIPS,**

        **Plaintiff,**

-vs-                                                               **Case No.  3-:05-CV-292**

**TEAMSTERS LOCAL UNION NO. 957, et al.,**

                                                               **Judge Thomas M. Rose**

        **Defendants.**

---

**ENTRY AND ORDER GRANTING DEFENDANT TECOM'S MOTION TO COMPEL ARBITRATION (Doc. #5); DISMISSING PLAINTIFF PHILLIPS'S CLAIMS AGAINST TECOM AND DENYING TECOM'S REQUEST FOR AN AWARD OF DEFENSE COSTS AND ATTORNEYS' FEES**

---

       This matter arises from the employment and subsequent termination of Plaintiff Darryl E. Phillips ("Phillips") by Defendant Tecom, Inc. ("Tecom"). Defendant Teamsters Local Union No. 957 ("Local 957") represented Tecom employees during the part of Phillips's tenure at Tecom.

       Count I of Phillips's Complaint in this matter is against Tecom for unjust discharge. Count II is against Local 957 for failure of its duty of fair representation ("DFR"). Count III is against Tecom for race discrimination in violation of Ohio statutes and Count IV is against both Tecom and Local 957 for intentional infliction of emotional distress ("IIED").

       Now before the Court is Tecom's Motion to dismiss this matter, or in the alternative, compel arbitration and stay all proceedings pending such arbitration pursuant to Fed.R.Civ.P. 12. (Doc. #5.) This Motion is now fully briefed and ripe for decision.

In its Motion, Tecom argues that Phillips should be forced to arbitrate his claims against Tecom pursuant to an arbitration agreement (the "Arbitration Agreement") that he entered into with Tecom. Tecom also seeks an award of defense costs and reasonable attorneys' fees. Phillips responds that the Arbitration Agreement is not valid for various reasons and that Tecom's request for defense costs and attorneys' fees is inappropriate. A brief factual background will first be set forth followed by an analysis of Tecom's Motion.

## FACTUAL BACKGROUND

Phillips was hired as a laborer by Trend Western, Inc. in August of 1998. (Compl. ¶6.) Trend Western was working, at the time, under a contract at Wright-Patterson Air Force Base. (Id.)

In March of 2003, the contract under which Trend Western was working was assumed by Tecom. (Id. 7.) Phillips was one of the Trend Western employees that was retained by Tecom. (Id.)

Phillips signed an Employment Dispute Resolution Procedure in connection with his hiring by Tecom. (Donna Mosebar 9/28/05 Decl. ¶7.) This Procedure was signed on April 1, 2003, and includes the Arbitration Agreement. (Id. Ex. A.)

In October of 2003, Phillips's employment became subject to the Collective Bargaining Agreement (the "CBA") that was negotiated with Tecom by Local 957. (Compl. ¶10.) The CBA was entered into for the benefit of Tecom's employees, and Phillips was one of the employees entitled to the benefits provided by the CBA. (Id. ¶11.)

Phillips's employment was terminated by Tecom on June 14, 2004. (Id. ¶13.) On June 18, 2004, Phillips filed a grievance with Local 957 regarding his complaints against Tecom. (Id. ¶¶

16, 17.) On February 2, 2005, Phillips was sent a letter from Local 957 indicating that Local 957 would not proceed to arbitration and would withdraw the grievance filed by Phillips on June 18, 2004. (Id. ¶18.)

After seeking a resolution of this matter with Local 957, Phillips filed the Complaint in this lawsuit. Phillips's Complaint was initially filed in the Court of Common Pleas of Greene County, Ohio on August 1, 2005, and was subsequently removed to this Court based upon this Court having federal-question jurisdiction.

## ANALYSIS

Tecom now asks that Phillips be required to arbitrate the claims against Tecom set forth in Phillips's Complaint in accordance with the Arbitration Agreement with Tecom that Phillips signed when Tecom took over for Trend Western. Phillips responds that the Arbitration Agreement is not valid under the general principles of Ohio contract law, was not properly initiated by Tecom, was waived by Tecom and was superceded by the CBA. The applicability of the CBA to Phillips's Complaint is first addressed.

### Applicability of CBA

Phillips argues that the Arbitration Agreement was replaced by the CBA pursuant to the doctrine of novation. The doctrine of novation is applied in Ohio when one contract is substituted for another, including contracts between the same parties. *Braverman v. Spriggs*, Case. No. 78AP-681, 1979 WL 209148 at *2 (Ohio Ct. App. June 26, 1979).

"[I]n order to effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement" because novation is never presumed. *Id.*

(citing 58 *Amercian Jurisprudence* 2d 534 (Novation Section 20)). Also, for a novation to exist, the pre-existing obligation must be extinguished. *Id.*

Phillips argues that the CBA was a substitute agreement that was meant to supplant the Arbitration Agreement. In support, Phillips points to evidence that the CBA went into effect after the Arbitration Agreement. Further, the CBA establishes a grievance procedure that provides the exclusive method for settling disputes arising under the CBA. (Plt.'s Memo In Opp. Ex. C.) The CBA also provides that Local 957 is the exclusive representative with respect to rates of pay, wages, hours of employment and other conditions of employment for all employees in the bargaining unit. (Id.)

For purposes of a Motion To Dismiss, or to force arbitration, there is evidence that the CBA was a novation to the Arbitration Agreement with regard to rates of pay, wages, hours of employment and other conditions of employment. The CBA was entered into after the Arbitration Agreement was in use by Tecom, particularly with regard to Phillips. In addition, the CBA recognizes Local 957 as the exclusive bargaining agent and establishes the **exclusive** method for settling disputes arising under the CBA.

There is a clear and definite intention by Tecom and the members of Local 957 that the provisions of the CBA for settling disputes replace any previously existing provisions for the members of Local 957 with regard to their rates of pay, wages, hours of employment and other conditions of employment. The issue then becomes whether any or all of the Counts of Phillips's Complaint are with regard to his rates of pay, wages, or hours or conditions of employment.

Counts I and II

Count I of Phillips's Complaint is against Tecom for unjust discharge and Count II is against Local 957 for breach of its DFR. Taken together, and with reference to Phillips's allegation that his Complaint is authorized under, among other statutes, 29 U.S.C. §185, these two Counts are what is known as a "hybrid" DFR claim.

The Supreme Court has determined that employees may bring a suit against both their employer and their union for breach of a collective bargaining agreement. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 163-65 (1983). As a formal matter, such a suit is composed of two causes of action. *Id.* The suit against the employer is for breach of the collective bargaining agreement and is based upon the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, and the suit against the union is based upon the union's breach of its DFR in handling the grievance. The DFR is implied under the LMRA. *Id.* When such a suit is brought against both the employer and the union, it is termed a "hybrid" action. *Id.*

In this case, Count I of Phillips's Complaint is against the company for breach of the collective bargaining agreement and Count II of Phillips's Complaint is against the union for breach of the union's DFR in the handling of his grievance. Finally, the LMRA, 29 U.S.C. §185 is cited as one of the bases for authorization of Phillips's Complaint.

Therefore, taken together, Counts I and II of Phillips's Complaint are a "hybrid" action brought pursuant to the LMRA[1]. While Counts I and II may factually involve Phillips's

---

[1] A claim against a union for breach of the DFR does not necessarily require a concomitant clam against the employer for breach of contract. *Breininger v. Sheet Metal Workers International Association Local Union No. 6*, 493 U.S. 67, 80 (1989).

conditions of employment, the nature of Phillips's claims involve violation of the LMRA, a statute, and not violation of the CBA.

The Supreme Court has held that not all disputes between an employee and his or her employer are suited for binding resolution in accordance with collective bargaining agreements. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 737 (1981). Specifically, claims based upon rights arising from a statute are independent of the collective bargaining process and are thus not suited for resolution in accordance with collective bargaining agreements. *Id.* In reaching this conclusion, the Supreme Court reasoned that an arbitrator empowered by a collective bargaining agreement is limited by the terms of the collective bargaining agreement. *Id.* at 744. The arbitrator "has no general authority to invoke public laws that conflict with the bargain between the parties." *Id.* (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 53 (1974)). Also, an arbitrator who is acting under the authority of a collective bargaining agreement is limited to construing the meaning of the collective bargaining agreement and is not necessarily enforcing a statute, particularly a statute whose underlying public policies may be hostile to the collective bargaining agreement. *Id.* The Supreme Court also reasoned that there is a potential disparity in interests between a union and an employee and that there is a difference between contractual rights under a collective bargaining agreement and individual statutory rights. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991). In sum, an employee who seeks to vindicate his contractual right under a collective bargaining agreement submits his or her grievance to arbitration under the terms of the collective bargaining agreement and an employee who wishes to assert independent statutory rights does so by filing a lawsuit. *Id.* at 745.

In this case, Phillips has sought to assert his independent statutory rights under the LMRA by filing a lawsuit. The rights that Phillips seeks to vindicate are separate from the CBA, there is a disparity of interests between Phillips and the union regarding these rights and an arbitrator acting under the provisions of the CBA would not have the authority to address claims under the LMRA. Therefore, Counts I and II of Phillips's complaint are not subject to arbitration under the provisions of the CBA.

Count III

Count III of Phillips's Complaint is against Tecom for race discrimination in violation of Ohio's civil rights statute, O.R.C. §4112.02. As with Counts I and II, Phillips has sought to assert his independent statutory rights under Ohio's civil rights statute and an arbitrator acting under the CBA would not have the authority to address claims under Ohio's civil rights statute. *See, e.g. Alexander v. Gardner-Denver Company*, 415 U.S. 36, 51 (1974)(rights conferred by the federal Civil Rights Act are not part of the collective bargaining process); *Penny v. United Parcel Service*, 128 F.3d 408 (6th Cir. 1997)(employee with obligation to arbitrate pursuant to a collective bargaining agreement retains right to obtain judicial determination of statutory claim). Therefore, Count III of Phillips's Complaint is not subject to arbitration under the provisions of the CBA.

Count IV

Count IV of Phillips's Complaint is against both Tecom and Local 957 for IIED. The actions that Phillips alleges to have caused his emotional distress are his unjust discharge by Tecom (Compl. ¶11, 14, 15), Local 957's failure to pursue his grievance (Compl. ¶18) and race discrimination by both Tecom and Local 957 (Compl. ¶11).

Phillips's IIED claim against Tecom is not cognizable under the CBA for two reasons. First, it is not in regard to Phillips's rates of pay, wages, hours of employment or other conditions of employment. Second, it is preempted by the LMRA.

State-law IIED claims against a union that are strictly based upon the exercise of CBA rights are preempted by the LMRA while IIED claims that are based upon abusive behavior above and beyond the routine exercise of CBA rights are not preempted. *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 802 (6th Cir. 1990). Count IV of Phillips's Complaint for IIED as pled is based upon his exercise of CBA rights and, therefore, is preempted.

None of the Counts of Phillips's Complaint are subject to the CBA. The next step, then, is to determine if Phillips's claims against Tecom are arbitrable outside the CBA.

### Applicability of Arbitration Outside of the CBA

Contracts to arbitrate are favored and the Federal Arbitration Act ("FAA") requires the enforcement of a wide range of written arbitration agreements by the courts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). The FAA permits parties to an "arbitrable dispute" to move out of court and into arbitration as quickly as possible. *Southland Corp. v. Keating*, 465 U.S. 1, 6 (1984).

Regarding arbitration, the law provides that an employee may make a contract with his or her employer provided that the contract is not inconsistent with a collective bargaining agreement. *J.I. Case Co. v. National Labor Relations Board*, 321 U.S. 332, 339 (1944). Presumably, then, the contract between an employee and employer may consist of an arbitration agreement and the FAA may require arbitration under this arbitration agreement.

The Sixth Circuit has repeatedly applied the Federal Arbitration Act ("FAA") to arbitration agreements formed in the employment setting. *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 376 (6th Cir. 2005), *cert. denied*, 2005 WL 3144115 (2005). However, the FAA excludes employment contracts involving certain types of employees from coverage. *Circuit City*, 532 U.S. at 112. Specifically, the FAA does not apply to contracts of employment of seamen, railroad employees or transportation workers actually engaged in the movement of goods in interstate commerce. *Id.*

In this case, Phillips does not claim that he is a seaman, railroad employee or a worker actually engaged in the movement of goods in interstate commerce. Therefore, Phillips is not the type of employee that is excluded from FAA coverage.

In addition to the limitation on certain types of employees, the FAA places two limitations upon the arbitration provisions themselves. *Southland*, 465 U.S. at 10-11. One is that the provisions must be part of a contract evidencing a transaction involving commerce[2]. *Id.* The second limitation is that arbitration provisions may be revoked upon the same grounds as for revocation of any contract. *Id.*

In this case, Tecom argues that the Arbitration Agreement is a contract that affects commerce and, therefore, evidences a transaction involving interstate commerce. In support, Tecom presents evidence that it is a diversified contract management firm that manages and operates twenty-one multi-disciplined technical and service contracts throughout the United

---

[2]The words "involving commerce" evidence Congress' intent to exercise its commerce clause powers to the fullest and are intended to include contracts that affect commerce. *Allied-Bruce Terminix Companies v. Dobson*, 513 U.S. 265, 277 (1995).

States (Mosebar Aff. ¶3) and the Arbitration Agreement is between Tecom and Phillips, one of its employees. Phillips does not challenge this argument.

In support of the broad enforceability of arbitration agreements, the Supreme Court has determined that claims brought pursuant to federal statutes are arbitrable provided an arbitration agreement is in place. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). By agreeing to arbitrate a statutory claim, "a party does not forgo the substantive rights afforded by the statute" but, instead, submits to their resolution in an arbitral rather than a judicial forum. *Id.*

The Supreme Court has also determined that parties may be compelled to arbitrate pendant state law claims. *Dean Witter Reynolds Inc., v. Byrd*, 470 U.S. 213, 218 (1985). By compelling arbitration of state-law claims, the court protects the contractual rights of the parties and their rights under the FAA. *Id.* at 221. Finally, the Supreme Court has held that arbitration compelled by the FAA extends to employment contracts in general as well as to other commercial contracts. *Circuit City*, 532 U.S. at 122.

There is an arbitration agreement in place between Tecom and Phillips. The Arbitration Agreement provides for the arbitration of a broad range of disputes including "any legal claim or dispute that either of us may hereafter have against or with the other…" Therefore, pursuant to the FAA and the Arbitration Agreement, Phillips may be compelled to arbitrate his claims against Tecom. Phillips may be compelled to arbitrate his claims whether they are statutory claims or pendant state law claims and even if the Arbitration Agreement is considered an employment agreement.

Phillips is not the type of employee excluded from FAA coverage and the first limitation on compelling arbitration that requires a contract evidencing a transaction involving commerce is

satisfied. The second limitation requiring that arbitration clauses may be revoked upon the same grounds as for revocation of any contract is argued by Phillips with regard to the Arbitration Agreement.

### Enforceability of the Arbitration Agreement

Phillips argues that the Arbitration Agreement is invalid under certain principles of Ohio contract law. Each of these arguments will be addressed in turn on the basis that Ohio contract law applies to the interpretation of the Arbitration Agreement since Ohio was the situs of all of the relevant events. *First Options of Chicago, Inc. V. Kaplan*, 514 U.S. 938, 944 (1995).

### Lack of Mutuality

Phillips argues that the Arbitration Agreement lacks mutuality because it unfairly favors Tecom. The Arbitration Agreement unfairly favors Tecom, according to Phillips, because it allows Tecom "maximum freedom" to sue Phillips for virtually any cause while denying Phillips the same right or benefit. Phillips argues that Tecom is not required to arbitrate claims "for injunctive and/or other equitable relief including, but not limited to, claims to enforce a covenant not to compete or for unfair competition or use or unauthorized disclosure of trade secrets or confidential information" while he must arbitrate a variety of claims including claims for breach of contract, various torts, discrimination, retaliation and claims for commissions or wages.

However, the Arbitration Agreement does not favor Tecom as argued by Phillips. The Arbitration Agreement exempts claims brought by both Tecom and Phillips. Claims by Phillips for workers' compensation benefits, unemployment compensation benefits and benefits based upon Tecom's employee welfare benefit plans which are otherwise appealable are exempted by

the Arbitration Agreement while Tecom is limited to injunctive and/or equitable relief for certain claims that it may bring.

In Ohio, mutuality of obligation in contract law does not mean that each party must have exactly the same obligations. *Robbins v. Country Club Retirement Center IV*, Case No. 04 BE 43, 2005 WL 678765 at *4 (Ohio Ct. App. Mar. 17, 2005). Further, "because an arbitration agreement can be read as being more favorable to one party does not invalidate the agreement as lacking mutuality." *Id.*

Phillips cites *Fuchs v. United Motor Stage Co.*, 21 N.E.2d 669 (Ohio 1939), in support of his argument that the mutuality requirement is not satisfied by the Arbitration Agreement. However, *Fuchs* supports Tecom's and not Phillips's argument. *Fuchs* discusses the specific performance of contracts and holds that it is not necessary that there be a mutuality of remedy as well as a mutuality of obligation under all contractual situations in order to invoke the remedy of specific performance. *Fuchs*, 21 N.E.2d at 674. *Fuchs* also holds that the availability of specific performance to one party is not a sufficient reason for refusing it to the other party. *Id.*

The Arbitration Agreement obligates both parties to arbitrate certain claims. With certain exceptions, Phillips waives his right to sue Tecom and Tecom waives its right to sue Phillips "for any claim or cause of action arising out of or relating to [Phillips's] employment relationship with [Tecom] or the termination thereof." The Arbitration Agreement, therefore, does not lack mutuality of obligation as defined in Ohio contract law. *See, e.g. Robbins*, 2005 WL 678765 at *2-4 (arbitration agreement that excluded certain employer claims for injunctive or equitable relief and employee claims for workers' compensation and unemployment compensation did not lack mutuality).

Unequal Bargaining Power

Phillips next argues that the Arbitration Agreement is invalid due to unequal bargaining power between him and Tecom and because Tecom did not explain that the obligation to arbitrate was not equal. Phillips was allegedly required to sign the Employment Dispute Resolution Procedure that included the Arbitration Agreement on his first day of work and without legal advice. Also, he was not given a copy of the Arbitration Agreement.

Unequal bargaining power is a form of procedural unconscionability. *Garrett v Hooters-Toledo*, 295 F.Supp.2d 774, 779 (N.D.Ohio 2003). In determining procedural unconscionability, Ohio courts look to factors "bearing on the relative bargaining position of the contracting parties." *Id.* at 783. The crucial question is whether each party, considering his or her education or lack thereof, had a reasonable opportunity to understand the terms of the contract or were the important terms "hidden in a maze of fine print." *Id.*

In this case, the Arbitration Agreement was not "hidden in a maze of fine print." It was plainly laid out in a normal type and in common language and given to Phillips to read. Phillips does not argue that the Arbitration Agreement was hidden in or among other documents that he signed. While the Arbitration Agreement may not have been explained to Phillips, it was not "hidden in a maze of fine print" and Phillips had an opportunity to understand it.

Phillips acknowledges signing the Employment Dispute Resolution Procedure that included the Arbitration Agreement but testifies that the Arbitration Agreement was not explained to him and he did not receive a copy at the time. (Phillips Aff. ¶2, 6.) However, the law does not require that the arbitration agreement be verbally explained to new hires or

prospective employees. *Robbins*, 2005 WL 678765 at *5. Nor does the law require that a copy of an arbitration agreement be given to the employee. *Id.* at *6.

Phillips also argues that the Arbitration Agreement is unconscionable because he was allegedly required to sign the Employment Dispute Resolution Procedure that includes the Arbitration Agreement before he could work for Tecom. However, an individual who voluntarily agrees to do something in an attempt to obtain employment is not being forced to do anything. *Morrison v. Circuit City Stores, Inc.*, 70 F.Supp.2d 815, 822 (S.D.Ohio 1999)(citing *E.E.O.C. v. Frank's Nursery & Crafts*, 966 F.Supp. 500, 504 (E.D.Mich 1997)), *affirmed on other grounds*, 317 F.3d 646 (6th Cir. 2003). Otherwise, practically every condition of employment would be invalid as an "adhesion contract" which could not be enforced because the condition of employment would have been presented on a "take it or leave it" basis. *Id.*

Finally, the obligation to arbitrate is not unequal. As determined hereinbefore, both parties are required to arbitrate their claims against each other with certain exceptions. And, these exceptions do not make the Arbitration Agreement fail for lack of mutuality. Therefore, there is no unequal obligation to arbitrate to be explained.

Phillips cites *Garrett v. Hooters-Toledo* for legal support that the Arbitration Agreement is invalid due to unequal bargaining power. However, the facts in *Garrett* are distinguishable from the facts in this case. In *Garrett*, the agreement to arbitrate was found to be substantively unconscionable, the employee had been working for three months when the agreement was presented for signature and there were clearly demonstrated pressures on the employee to accept the agreement, no matter what it said. In this case, the Arbitration Agreement has not been found to be substantively unconscionable. Also in this case, if there was pressure to sign the agreement,

-14-

it was due to the possibility that Tecom may not employee Phillips and this type of pressure has not been found to result in procedural unconscionability.

In sum, the Arbitration Agreement is not invalid due to unequal bargaining power between Phillips and Tecom. The Arbitration Agreement was presented in normal type and common language and was not hidden from Phillips "in fine print." Further, the law does not require Tecom to explain or provide a copy of the Arbitration Agreement to Phillips. Finally, there is no evidence that Phillips was "forced," in the legal sense, to sign the Employment Dispute Resolution Procedure which included the Arbitration Agreement.

### Failure To Invoke Condition Precedent

Phillips's final argument for finding the Arbitration Agreement to be invalid is that Tecom failed to abide by a condition precedent to the Arbitration Agreement. The condition precedent that Phillips argues should have been followed by Tecom is the service of written notice on Phillips with a description of the action that Tecom would like to arbitrate. Tecom responds that this is an irrational interpretation of the Arbitration Agreement.

When presented with a rational interpretation of a contract and an irrational interpretation, courts are to presume that the rational interpretation controls absent evidence to the contrary. *Ohio Crane Co. v. Hicks*, 143 N.E. 388, 389 (Ohio 1924). In this case, there is no evidence regarding interpretation, beyond the language of the Arbitration Agreement.

The Arbitration Agreement provides that "a party wishing to submit a claim for arbitration must serve a written notice on the other" party which describes the claim to be arbitrated and specifically requests arbitration of the claim. However, it is Phillips who has the

claim and not Tecom. It is Phillips who was required by the Arbitration Agreement to serve a written notice on Tecom which included the required information.

Phillips is now attempting to argue that Tecom was required to notify Phillips that Tecom wanted to arbitrate Phillips's claims. However, this is an irrational interpretation of the Arbitration Agreement. Tecom would have no way of knowing that Phillips had a claim or the nature of the claim. Therefore, assuming that Tecom could describe Phillips's claim and the supporting facts for purposes of arbitration is irrational and, therefore, unenforceable. Tecom did not fail to initiate a condition precedent to invocation of the Arbitration Agreement.

The Arbitration Agreement is enforceable among Tecom and Phillips. The Arbitration Agreement is part of a transaction involving interstate commerce and its provisions are not invalid under Ohio contract law.

## Waiver

Phillips's final argument regarding mandatory arbitration is that Tecom waived the agreement to arbitrate contained in the Arbitration Agreement. Tecom did not reply to this argument.

"There is a strong presumption in favor of arbitration and… waiver of the right to arbitration is not to be lightly inferred." *O.J. Distributing, Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 355 (6th Cir. 2003)(quoting *Cotton v. Slone*, 4 F.3d 176, 179 (2nd Cir. 1993)). Yet, an agreement to arbitrate may be waived by the actions of a party which are completely inconsistent with any reliance upon arbitration. *Id.* at 356 (citing *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002)). Specifically, the right to arbitration may

be waived by delaying its assertion to such an extent that the opposing party incurs actual prejudice. *Id.*

In this case, Phillips's basis for his argument that Tecom waived arbitration is that his Counsel contacted Tecom seeking an amicable resolution and was rebuffed without mention of the Arbitration Agreement and that Tecom did not respond to his letter indicating his intent to bring this matter to litigation. Tecom, according to Phillips, had two different opportunities to respond by following the procedure required by the Arbitration Agreement.

However, as determined above, Tecom was not required to initiate arbitration of Phillips's claims. The initiation of arbitration of Phillips's claims was his responsibility. Therefore, Tecom did not act inconsistent with its right to arbitrate nor inconsistent with Phillips's right to arbitrate. Tecom's failure to initiate the arbitration of Phillips's claims is not a waiver of the Arbitration Agreement by Tecom. Having determined that the Arbitration Agreement is valid and was not waived, the analysis turns to whether the specific claims brought against Tecom in this matter must be arbitrated.

### Arbitration of Phillips's Claims Against Tecom

The FAA provides for orders compelling arbitration when one party has refused to comply with an arbitration agreement. *Higgs v. Automotive Warranty Corporation of America*, Case No. 03-4381, 2005 WL 1313542 at*2 (6th Cir. May 13, 2005). Further, where the arbitration agreement provides that the arbitrator's decision is final and binding, courts have dismissed the case once it is determined that arbitration must be compelled. *Raasch v. NCR Corporation*, 254 F.Supp.2d 847, 851 (S.D.Ohio 2003)(citing *Arnold v. Arnold Corp.-Printed Communications for Business*, 920 F.2d 1269, 1276 (6th Cir. 1990)).

In this case, the Arbitration Agreement provides for arbitration of the type of claims brought in Counts I, III and IV of Phillips's Complaint against Tecom and Phillips does not argue otherwise. Further, the Arbitration Agreement is not replaced by the CBA for these claims. In addition, the Arbitration Agreement was entered into by and between Tecom and Phillips and it is not invalid due to a lack of mutuality, unequal bargaining power or a failure to initiate a condition precedent. Finally, Tecom did not waive its right to arbitrate. Therefore, pursuant to the Arbitration Agreement, Phillips must arbitrate the claims that he has brought against Tecom in Counts I, III and IV of his Complaint.

### To Stay or Not To Stay

The Arbitration Agreement provides for final and binding arbitration of Phillips's claims against Tecom. Therefore, there is no reason for this Court to remain involved and Phillips's claims against Tecom are DISMISSED.

### Defense Costs and Attorneys' Fees

Tecom's Motion includes a request for an award of defense costs and attorneys' fees. However, Tecom presents no argument regarding this request in either its Memorandum In Support or its Reply Memorandum. Therefore, this request is not well founded and is overruled.

### Summary

The Arbitration Agreement provides for final, binding arbitration of the claims brought against Tecom in Counts I, III and IV of Phillips's Complaint and it is not replaced by the CBA for adjudication of these claims. Further the Arbitration Agreement is not invalid due to lack of mutuality, unequal bargaining power or a failure to initiate a condition precedent and it was not waived by Tecom.

Therefore, Tecom's Motion To Compel is GRANTED. Tecom and Phillips are compelled to arbitrate the claims brought in Counts I, III and IV of Phillips's Complaint against Tecom.

Since Phillips's claims against Tecom are subject to final, binding arbitration, Phillips's Complaint against Tecom is DISMISSED. Phillips's claims against Local 957 remain to be adjudicated.

Finally, Tecoms request for an award of defense costs and attorneys' fees is not well founded. It is, therefore, overruled.

**DONE** and **ORDERED** in Dayton, Ohio, this Thirteenth day of December, 2005.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record